**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| JOHN TATOIAN, | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | 3:13-CV-1255 (VLB) |
| v. | : | |
| | : | |
| ANTHONY JUNGE; GLOBAL FINANCING | : | |
| SOLUTIONS LLC; WILLIAM LEE | : | |
| ANDREWS III; LARRY GELFOND; and | : | November 26, 2013 |
| RICHARD A. SCHULENBERG ESQ. | : | |
| Defendants. | : | |

**MEMORANDUM OF DECISION GRANTING**
**DEFENDANT'S MOTION TO QUASH SERVICE OF SUMMONS**
**AND TO DISMISS [Dkt. #47]**

I.    **Introduction**

The Plaintiff John Tatoian, a Connecticut resident, brings this action against Defendant Richard A. Schulenberg, Esq. (the "defendant"), a California resident with his principal place of business and law practice in California, for Breach of Oral Agreement (Count X of the Corrected Verified Complaint (hereinafter "Complaint")), Negligence (Count XI of the Complaint), Conversion (Count XII of the Complaint), and Unjust Enrichment (Count XIII of the Complaint). Schulenberg has moved to quash service of the summons and Complaint and to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), lack of subject matter jurisdiction,[1] and Fed. R. Civ. P. 12(b)(2), lack of personal jurisdiction.

---

[1]    Although the defendant filed a motion to dismiss for lack of subject matter jurisdiction, he fails to argue the basis for this motion in his memorandum of law. Regardless, this Court finds that it has diversity jurisdiction over the dispute

For the reasons that follow, Defendant's Motion is dismiss for lack of personal jurisdiction is GRANTED.

II.    Background

The following facts and allegations as related to the defendant are taken from the Complaint.  In November 2012, the plaintiff was repeatedly solicited by defendants Edward Glazebrook and Anthony Junge (collectively the "Borrowers") regarding a possible investment opportunity with Global Financing Solutions, LLC ("Global").  [Dkt. #27, Corrected Verified Complaint, ¶¶ 2, 20].  Over the next forty five days, the plaintiff was contacted by the Borrowers through the postal service, email, telephone, and by facsimile transmission.  [*Id.* at ¶ 21].  Around December 2, 2012, the plaintiff executed a note in the amount of $325,800 for the Borrowers after they assured the plaintiff that

> a) they were adequately capitalized and had sufficient financial ability to repay the loan, specifically with funds held at Fidelity Investments; b) they would protect his funds with the utmost care and not release such funds unless adequate security was received into escrow; c) the loan would be used to facilitate a transaction that could lead to a total revenue of $35 million within a year; and d) they were going to lease three separate letters of credit in the amount of $1.5 Billion and would monetize them through the retention of Attorney William Lee Andrews, III.

[*Id.* at ¶ 22].  Around December 2, 2012, the plaintiff claims that he entered into "an oral escrow agreement whereby [the defendant] agreed to serve as an escrow

---

under 28 U.S.C. § 1332(a)(1) because the plaintiff is a resident of Connecticut seeking damages of more than $75,000 and each defendant is not a citizen of Connecticut.

agent" and to "wire [the plaintiff's] monies to the escrow account of Attorney Andrews at Wells Fargo Bank." [*Id.* at ¶¶ 26-27, 133].  Around December 17, 2012, the defendant "made withdrawals of legal fees and escrow charges without [the plaintiff's] authorization" totaling $19,870.00, and then wired "the balance of $306,870.00 to Attorney Andrews's account at Wells Fargo."  [*Id.* at ¶¶ 28-29].  The plaintiff summarily alleges that this act was contrary to the terms of the oral agreement and serves as the basis for his claims against the defendant for breach of contract and various related torts.  [*Id.* at ¶¶ 132-156].  Unfortunately, the plaintiff never stated the terms of the oral agreement and failed to allege in sufficient detail the defendant's relationship to the overall scheme and to the Borrowers.  Moreover, the plaintiff does not allege the facts and circumstances surrounding the creation of the oral agreement with the defendant. The defendant now moves for this Court to dismiss the suit against him for lack of personal jurisdiction.

III.  **Legal Standard**

A. **Personal Jurisdiction**

"When a defendant challenges personal jurisdiction in a motion to dismiss, the plaintiff bears the burden of proving that the court has jurisdiction over the defendant."  *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001).  A plaintiff facing a Rule 12(b)(2) motion to dismiss made before any discovery only needs to allege facts constituting a *prima facie* showing of personal jurisdiction. *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005).  A plaintiff can make the requisite factual showing through its "own affidavits and supporting

3

materials" which the Court may review and consider.  *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981).  To establish a *prima facie* case of personal jurisdiction over a defendant, a plaintiff must satisfy a two part inquiry: "[f]irst, it must allege facts sufficient to show that Connecticut's long-arm statute reaches the defendant, and second, it must establish that the court's exercise of jurisdiction will not violate due process."  *Chirag v. Mt Marida Marguerite Schiffahrts*, No. 3:12CV879(SRU), 2013 WL 1223293, at *1 (D. Conn. Mar. 26 2013) (citing *Knipple v. Viking Communications, Ltd.*, 674 A.2d 426, 428-29 (Conn. 1996)).  Thus the plaintiff's Complaint must allege facts sufficient to show that Connecticut's long-arm statute reaches Schulenberg and that the Court's exercise of jurisdiction over Schulenberg will not violate due process.

### i. Connecticut Long-Arm Statute

In diversity cases, federal courts must look to the forum state's long-arm statute to determine if and when personal jurisdiction can be exercised over nonresident defendants.  *Savin v. Ranier*, 898 F.2d 304, 306 (2d Cir. 1990).

### 1.  Conn. Gen. Stat. § 52-59b

Both the plaintiff and defendant agree that the relevant long-arm statute creates a qualitative standard by providing for jurisdiction only over those foreign residents that

> commit a tortious act within the state . . . [or] commit a tortious act outside the state causing injury to person or property within the state . . . if such person . . . regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial

> revenue from goods used or consumed or services
> rendered, in the state, or . . . expects or should
> reasonably expect the act to have consequences in the
> state and derives substantial revenue form interstate or
> international commerce . . . .

Conn. Gen. Stat. § 52-59b.  Diminutive or incidental contact will not suffice.

The plaintiff argues that the long-arm statute is satisfied because the defendant committed a tort that caused injury in Connecticut and the defendant sufficiently transacted business in Connecticut by sending electronic and telephonic communications to him.  [Dkt. #49, Objection to Motion to Quash Service and Motion to Dismiss, p. 8-10].

The statute does not provide a precise definition of what constitutes soliciting business in Connecticut but the Connecticut Supreme Court has interpreted the phrase to include "a single purposeful business transaction." *Zartolas v. Nisenfeld*, 440 A.2d 179, 181 (Conn. 1981); *Milne v. Catuogno Court Reporting Serv., Inc.*, 239 F. Supp. 2d 195, 202 (D. Conn. 2002)(GLG).  In determining whether a business transaction qualifies as purposeful, courts do not apply a rigid formula but rather balance "public policy, common sense, and the chronology and geography of the relevant factors." *Harris v. Wells*, 832 F. Supp. 31, 34 (D. Conn. 1993)(WWE) (quoting *Zartolas*, 440 A.2d at 182).  Courts are instructed to examine the "nature and quality, rather than the amount of Connecticut contacts to determine whether there was purposeful activity." *Vertrue Inc. v Meshkin*, 429 F. Supp. 2d 479, 490 (D. Conn. 2006)(PCD) (citations and internal quotation marks omitted) (holding that defendant who made two business trips to Connecticut and had numerous phone and email conversations

with a Connecticut corporation was subject to personal jurisdiction in District of Connecticut).

Looking at the allegations in the Complaint, it is impossible for this Court to find that the defendant has the requisite quality or quantity of contacts with this state to establish regular or purposeful business transactions.  In *Chirag v. Mt. Marida Marguerite Schiffarhrts*, the court found that even though there was a specific contract between the parties, it could not exercise jurisdiction under the long-arm statute when the contract did not reference Connecticut law and when the plaintiff did not introduce evidence of electronic or telephonic communications by the defendant to a resident in Connecticut and failed to allege that any defendant was ever present in Connecticut or had any apparent desire to connect the contract with the state.  933 F. Supp.2d at 353.  Here, the plaintiff has not alleged, let alone provided evidence, that the defendant ever directly contacted the plaintiff regarding the investment in this case.  Even though the plaintiff claims that the Borrowers repeatedly solicited his investment over the telephone and through other electronic media spanning a forty five day period, no similar allegation against the defendant is made.  The defendant, on the contrary, alleged that he actually had a contract with the other defendants in this case for his escrow services, not the plaintiff.

The plaintiff argues that courts in this circuit have held that electronic and telephonic communications directed towards Connecticut are sufficient for a finding of personal jurisdiction.  Indeed in *Cody v. Ward*, as cited by the plaintiff, the court held that where multiple electronic or verbal misrepresentations were

6

sent by a nonresident defendant into Connecticut, exercise of jurisdiction under the long-arm statute for a claim sounding in tort was appropriate.  954 F. Supp. 43 45-46 (D. Conn. 1997).  As the plaintiff admits, the court made this finding based on the multiple electronic communications between the parties.  *Id.* at 43. Other courts, however, have held that one email communication is insufficient to create long-arm jurisdiction.  *See Nedgam Productions, LLC v. Bizparentz Foundation*, No. 3:09-cv-500(CFD), 2010 WL 3257909, at * 5 (D. Conn. April 29, 2010) ("[I]t cannot be said that Henry's single act of sending one allegedly defamatory e-mail into Connecticut is sufficient for the purpose of establishing personal jurisdiction under the long-arm statute."); *see also Bross Utils. Serv. Corp. v. Aboubshait*, 489 F. Supp. 1366, 1371-72 (D. Conn. 1980), *aff'd*, 646 F.2d 559 (2d Cir. 1980) ("The transmission of communications between an out-of-state defendant and a plaintiff within the jurisdiction does not, by itself, constitute the transaction of business in the forum state.").  Regardless, this Court need not determine what quantity of communications is sufficient to exercise jurisdiction because the plaintiff in this case has not specifically alleged even one such communication.  The complaint states that there was an oral agreement regarding the escrow services between the parties, but it fails to state how this contract was actually made, such as if there was a telephone call between the parties, if there was such a call, who initiated the call, or more generally the duration or nature of any specific communication or discussion between the plaintiff and the defendant.  Moreover, the plaintiff does not describe any of the terms of the oral escrow agreement allegedly formed by the plaintiff and the defendant.  The

plaintiff's assurance that it will be able to "show through discovery that [the plaintiff] was contacted on several occasions by Schulenberg by both telephone and email," is insufficient to meet the plaintiff's burden in proving jurisdiction.

The facts of this case are similar to the facts in *Solano v. Calegari,* 949 A.2d 1257 (Conn. App. 2008). In that case, the trial court found that the long-arm statute did not confer personal jurisdiction, and after conducting a plenary review, the Appellate Court affirmed that decision. There, the request for and discussion of a loan took place in Connecticut, and the defendant told the plaintiff that she intended to keep the loan proceeds in her bank account and not withdraw them. *Id.* at 738. The loan proceeds were advanced to a brokerage account in New York, transferred between brokerage accounts and finally withdrawn by the defendant from a financial institution outside of Connecticut. *Id.* In its plenary review, the Appellate Court, on scant facts like those alleged here, reasoned that

> Although the discussion of the loan and the request for the loan both took place in Connecticut, we cannot say, on the basis of the record before us, that these contacts amounted to a single purposeful business transaction. The nonspecific nature of the court's findings do not permit us properly to analyze the defendant's contacts with this state or to balance considerations of public policy, common sense or the chronology and geography of the relevant factors. *See, e.g., Ryan v. Cerullo,* 282 Conn. 109, 120, 918 A.2d 867 (2007) (New York accountant not subject to jurisdiction in this state under § 52–59b(a)(1) even though he prepared plaintiff's Connecticut tax returns); *Rosenblit v. Danaher,* 206 Conn. 125, 138, 140–41, 537 A.2d 145 (1988) (Massachusetts attorney not subject to jurisdiction in this state under § 52–59b (a)(1) even though he had business meeting with plaintiff in Connecticut); *Green v. Simmons,* 100 Conn.App. 600, 607–608, 919 A.2d 482 (2007) (mailing of two letters to Connecticut insufficient*).

*Id.* at 739. Here, the plaintiff states that at some future date he will present additional facts supporting his claim of jurisdiction; however, the Court is bound by the facts presented in the Complaint and cannot find jurisdiction now under the hopes that it will be demonstrated in the future. Accordingly, the plaintiff has not shown that the defendant transacts or otherwise solicits business in Connecticut.

It is also unclear whether the defendant has in fact even committed a tort in this case. The first element of any tort claim under Connecticut law is that the defendant owed a duty to the plaintiff. *See Jagger v. Mohawk Mountain Ski Area, Inc.*, 269 Conn. 672, 687 n.13 (Conn. 2004). The plaintiff here has not alleged sufficient facts for the Court to understand the relationship between the parties; without an understanding of the relationship, defined by the terms of the oral agreement, the plaintiff has not met its burden in sufficiently alleging that defendant could have committed a tort. *See Dignan v. McGee*, No. 07-cv-1307(JCH), 2009 WL 973495, at *6 (D. Conn. April 9, 209) ("There is nothing in either the Complaint or Amended Complaint that suggests that McGee had a duty to supervise Flanagan. As such, because there is no duty, it cannot be said that McGee committed a tort in Connecticut pursuant to section of § 52-59b(a). Therefore, the court cannot exercise personal jurisdiction over her.").

Finally, the last possible element at issue under the long-arm statute would be that the defendant derived substantial financial benefit from goods consumed or services rendered in Connecticut or, more generally, revenue from interstate or international commerce. As the Complaint makes clear, no goods were at issue

9

in this case, and the services rendered by the defendant, namely his escrow services, were rendered in California, not in Connecticut.  Moreover, the plaintiff has not alleged facts to establish that the defendant derived a substantial financial benefit from interstate or international commerce.  The Complaint merely avers that the defendant "made withdrawals of legal fees and escrow charges totaling $19,870.00, and then wired "the balance of $306,870.00 to Attorney.  The amount withdrawn represents approximately 6.5% of the total amount deposited, only a portion of which is attributed to the escrow fee.  Six and one-half percent is negligible when considered in the context of the reputed value of the investment.  There are no facts from which the Court could find that he defendant derived a substantial financial benefit from the escrow agreement.  Accordingly, the plaintiff has not fulfilled its burden in showing that this Court can exercise jurisdiction over the defendant under the relevant long-arm statute.

### ii.    Due Process Considerations

Even though it need not address the second step of the personal jurisdiction inquiry since the Court found that exercise of jurisdiction is not permitted under the relevant long-arm statute, exercise of jurisdiction over the defendant would also violate constitutional principles.  Generally, courts must consider whether a defendant has sufficient contact with the forum "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  The purpose of this requirement is to protect "an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful

contact, ties, or relations." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985). "The test to be applied in considering the reach of personal jurisdiction is whether (1) the nonresident party has created a substantial connection to the forum state by action purposefully directed toward the forum state . . . and (2) the exercise of jurisdiction based on those minimum contacts would not offend traditional notions of fair play and substantial justice." *Id.* at 639.

The minimum contacts prong of this inquiry is analyzed both under specific jurisdiction, which exists where a state "exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum," and under general jurisdiction, which "is based on the defendant's general business contacts with the forum state and permits a court to exercise its power in a case where the subject matter of the suit is unrelated to those contacts." *Id.* at 640. "Because general jurisdiction is not related to the events giving rise to the suit, courts impose a more stringent minimum contacts test, requiring the plaintiff to demonstrate the defendant's continuous and systematic general business contacts." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567-68 (2d Cir. 1996) (internal quotation marks and citations omitted). Given the allegations in this case, it is clear that the Court does not have general jurisdiction over the defendant. The plaintiff has not made any allegations that the defendant regularly conducts business in Connecticut, and the defendant has averred that he does not have any employees in Connecticut, does not have an office outside of California, does not advertise in magazines, newspapers, television or radio, does not conduct events or promotions in Connecticut, and

does not own or lease any real property in Connecticut.  [Dkt. #47, Declaration of Richard Schulenberg, ¶¶ 3-7].  The allegations of the Complaint cannot be read to allege more than a single telephone conversation between Tatoian and Schulenberg.  Therefore, there are no facts that would show a continuous and systematic business relationship between the defendant and Connecticut.

Under specific jurisdiction, the Court must first analyze whether the defendant has sufficient minimum contacts with the forum.  If minimum contacts are found, the Court would then examine the reasonableness of adjudication in this forum.  Because this Court finds that the minimum contacts prong is not met, it will not examine the reasonableness of adjudication in Connecticut.

### 1.  Minimum Contacts

To exercise specific jurisdiction over a defendant, the plaintiff's action must be related to the defendant's contacts within the forum, and "the requisite 'minimum contacts' must be such that [the defendant] can 'reasonably anticipate' being hauled into court in the forum state."  *Vertrue Inc.*, 429 F. Supp. 2d at 495 (citations omitted); *see also Burger King Corp.*, 471 U.S. at 474 (holding that defendant must have enough contacts with the forum state so that court's exercise of personal jurisdiction over defendant's conduct in connection with the state should be reasonably foreseeable).  As with determining whether a defendant has transacted business in Connecticut under the state's long-arm statute, the minimum contacts inquiry rests upon the totality of the circumstances analysis; all of the defendant's contacts within the forum state

"must indicate that jurisdiction is proper."  *Grand River Enters. Six Nations, Ltd. v. Pryor,* 425 F.3d 158, 166 (2d Cir. 2005).  Most importantly for this inquiry is whether the defendant has "purposefully avail[ed] itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws."  *Vertrue Inc.*, 429 F. Supp. 2d at 495 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

As discussed above, the plaintiff has not alleged any affirmative actions taken by the defendant showing that he purposefully availed himself of the privileges of conducting business in Connecticut.  The plaintiff only alleges that the Borrowers contacted him repeatedly over a forty five day period; no equivalent allegation is made against the defendant.  The Court agrees with the defendant's contention that based on the Complaint, receipt of plaintiff's funds only constituted a "passive act which cannot logically confer jurisdiction" by this Court.  [Dkt. #47, p. 11].  Without proof that the defendant affirmatively solicited the plaintiff in Connecticut, the plaintiff has failed to show the requisite minimum contacts with this forum.

13

IV.     Conclusion

For the foregoing reasons, defendant's [Dkt. #47] Motion to Dismiss for want of Personal Jurisdiction is GRANTED.

IT IS SO ORDERED.

_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: November 26, 2013

14